983 F.2d 1067
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steve KYGER, Petitioner-Appellant
v.
Howard CARLTON, Warden, Respondent-Appellee
 No. 92-5244.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1992.
 
 Before MERRITT, Chief Judge, BOYCE F. MARTIN Jr. and BOGGS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This is an appeal from the District Court's denial of Appellant Steve Kyger's petition for the writ of habeas corpus. Kyger claims that the District Court erred in finding that the state court's admission of certain evidence in violation of his Fifth Amendment right to counsel was harmless error. The record leaves us with questions about precisely what evidence the state trial court admitted and how it was presented to the jury. We therefore remand to the District Court for further findings of fact and conclusions of law.
 
 
 2
 Petitioner Kyger seeks habeas relief from his conviction in Tennessee state court for first degree murder, armed robbery, and felonious use of an automobile. The central issue on appeal is whether the trial court's admission of several statements elicited after Kyger requested counsel was harmless error. Harmless error analysis requires a sensitive weighing of all of the material evidence in the case. In order to decide this question properly, we need to know precisely what Kyger said each time the police spoke with him, and how these statements and other evidence were presented to the jury and relied upon by the prosecution.
 
 
 3
 While the record in this case now before us is lengthy, it leaves many crucial questions unanswered or only partially answered. Because the attorney for the State of Tennessee was new on this case, and the attorney from the Federal Public Defender's office was appointed only recently and only after Kyger appeared pro se for most of the prior proceedings, they were unable to provide full assistance at oral argument regarding the details of the investigation, prosecution, and trial. Among the questions that remain are the following:
 
 
 4
 1. Exactly what occurred at each of the various interviews of Steve Kyger on November 14, 1986, November 24, 1986, and at other times during the police investigation? How many interviews were there and when did they occur? What did Kyger say on the various occasions and how was this evidence admitted by the court and used by the prosecution at the trial? While the record does contain a transcript of one interview with Kyger on November 14, 1986, it is unclear what else Kyger said on that night, and which of his statements the jury was allowed to hear. It is also unclear what statements Kyger made on November 24, 1986 that were used against him at trial--the record contains only second-hand and partial summaries by prosecution witnesses of what he said. There is also some indication in the record that the police investigators may have interacted with Kyger at various times between November 14 and November 24, but the record is unclear as to when these conversations occurred and what, if any, statements were obtained.
 
 
 5
 2. Was there a violation of Kyger's constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), prior to the reading of his rights at the police station on November 14, 1986 or at any other time during the investigation? The record shows that Kyger was taken into custody at PDQ Pizza on November 14, 1986, and taken to the truck used in the crime before going to the police station. There is some indication that he may have been questioned before reaching the police station and receiving Miranda warnings.
 
 
 6
 3. How far was it from Hammer's Automotive to PDQ Pizza? The District Court's opinion suggests it is approximately five miles, but the record seems to say it is only one and seven-tenths of a mile.
 
 
 7
 4. What interaction was there between the investigating officers and Kyger between his release from custody on November 14, 1986, and his arrest on November 24, 1986? Did the investigating team take any evidence or statements during this period that was used at trial?
 
 
 8
 5. What evidentiary tests did the police perform, and was the constitutional validity of any of these tests affected by the Fifth Amendment violation or any other constitutional violations?
 
 
 9
 After making findings of fact and conclusions concerning these and similar factual and legal issues, the District Court should determine whether the trial court's error was "harmless" under the standard set forth in Chapman v. California, 386 U.S. 18, reh'g. denied 386 U.S. 987 (1967).
 
 
 10
 Accordingly the judgment of the District Court is vacated and the case remanded to the District Court for further findings and conclusions in accordance with this opinion.